215 A.2d 235.

ELLA DAWES *vs.* JOHN W. MCKENNA *et ux.*

DECEMBER 14, 1965.

PRESENT: Roberts, Paolino and Joslin, JJ.

318

ROBERTS, J. This action of trespass on the case for negligence was brought to recover damages for injuries sustained

by the plaintiff who, while employed as a domestic servant by the defendants, slipped on an icy walk at the rear of the house where she was thus employed. The case was tried to a justice of the superior court sitting with a jury, and a verdict was returned for the plaintiff in the amount of $4,500. The court thereafter denied the defendants' motion for an unconditional new trial but ordered a new trial on the issue of damages only unless the plaintiff remitted all of the verdict in excess of $3,000. Such a remittitur was filed by the plaintiff, but the defendants have prosecuted a bill of exceptions to this court including that taken to the denial of their motion for a directed verdict, the denial of their motion for an unconditional new trial, and the refusal to instruct the jury according to requests therefor made.

It appears that plaintiff was employed at the home of defendants on Wednesday and Friday of each week doing cleaning and maintenance work. In the course of these activities she was required occasionally to empty the contents of the wastebasket into an incinerator located in a rear yard. To do this she would leave the house by way of a rear door, cross a driveway, and pass through a gate into that part of the yard where the incinerator stood. It is not disputed that on March 7, 1962 at a time when the driveway and the rear yard were covered with a substantial accumulation of frozen snow and ice plaintiff, while carrying a wastebasket to the incinerator, slipped on ice in the driveway and fell, causing injury for which she now seeks damages.

The common-law principles governing the liability of a master for injury sustained by his servants are applicable generally to cases involving injury to domestic servants, and accordingly a master is required to exercise reasonable care to provide such servants with reasonably safe places in which to work. See cases collected in Annot., 49 A.L.R.2d 317, 320. This view was stated by this court in *Collins* v. *Harrison*, 25 R. I. 489, and reiterated in *Hawkins*

v. *Leach,* 88 R. I. 98. In the latter case we held that an employer of a domestic servant may be liable for the injury of such servant when it results from his failure to exercise reasonable care for the servant's safety while engaged in the scope of the employment, so long as the servant has not assumed the risk of the danger in question and is not guilty of negligence that contributes to his injury.

While there is authority to the contrary, it is our opinion that in appropriate circumstances the obligation to furnish a reasonably safe place in which the servant may work extends to outside walks or passages rendered dangerous by accumulations of ice or snow. Many cases which upon examination appear to hold to the contrary are distinguishable in that the walks or passages where the snow or ice accumulated were not in fact areas within which the servant was required to work, usually being walks used for ingress and egress or other incidental purposes not work connected.

In the instant case, however, the walk upon which plaintiff fell was part of defendants' premises within which her duties were to be performed, in part at least. Therefore, it was the duty of defendants to keep it reasonably safe for such use. *Faltinali* v. *Great Atlantic & Pacific Tea Co.,* 55 R. I. 438. That plaintiff may not have been required to empty the basket in times of inclement weather is not material here, the fact being that she made use of the walk in the performance of her duties at the time she was injured by the fall. If that fall was a result of defendants' failure to act reasonably to keep the walk safe for such use, they are liable for her injury unless she had assumed the risk of that condition as being part of her employment or was so negligent in using the walk as to contribute to her own injury. *Boettger* v. *Mauran,* 64 R. I. 340.

We are unable to agree with defendants' contention that the court erred in submitting the question of their negligence and plaintiff's contributory negligence to the jury. In

the state of the evidence here the questions whether defendants acted reasonably to keep this portion of the premises safe for the pertinent use and whether plaintiff acted reasonably in using the path in the light of her knowledge of its icy condition were, in our opinion, properly submitted to the jury.

The defendants' contention that plaintiff was contributorily negligent as a matter of law rests upon her action in using the walk, knowing of its icy condition. This, they contend, was not the action of a reasonably prudent person in the same circumstances. Primary reliance is placed upon plaintiff's testimony that as she entered the yard to go to the incinerator, she saw the icy pavement and noticed that it was not sanded. She testified also: "I had been over it before and I thought I could go over it again because I was doing my work." When asked if at that moment she had "decided to take a chance," she replied: "I didn't think it was going to be a chance, I thought I was going to get through." We cannot accept the contention that this establishes that plaintiff was contributorily negligent as a matter of law. To the contrary, it is our opinion that a trier of the fact could reasonably reach different conclusions on this evidence.

It is our conviction after an examination of the evidence that this case falls within the view taken in *Matthiessen* v. *Adrian*, 110 N.Y.S.2d 830, affirmed in 306 N. Y. 694. In that case the court said: "The master's knowledge of the dangerous condition imposed a duty to use reasonable care to make the place of work safe. The servant's knowledge placed no such duty on her. Her duty, so far as the question of contributory negligence is concerned, was only to exercise due care for her safety. The duty of the master and the duty of the servant under the circumstances were not the same, so the jury could very well hold that the master failed in his duty and that the servant did not fail in

her duty." The evidence as it stands here raises similar questions, and these issues were properly submitted to the jury.

The defendants contend further that the court erred in submitting the question of their liability to the jury because plaintiff had "voluntarily assumed a known and obvious risk." This, as we understand it, is to invoke the doctrine of assumption of risk which arises out of the relationship of employer and employee. It is a defense to liability on the part of the employer that differs entirely from the rule of contributory negligence in these cases. See *Geis* v. *Hodgman,* 255 Minn. 1. Either doctrine may be invoked for the purpose of defeating liability even though the negligence of the employer in failing to provide a safe place to work has been established. While the doctrines are not mutually exclusive, that of assumption of risk properly is limited to risks that arise out of perils which in fact are incidental to the character of the employment and are assumed by the employee without reference to any criteria of negligence. The employer-employee doctrine of assumption of the risk does not apply to situations where an employee undertakes to act in the face of a peril arising out of conditions extraneous to the employment and which are of such a character that an ordinary prudent person would not have acted thusly in the same circumstances.

The defendants in the instant case appear to concede that the doctrine of assumption of risk relates exclusively to perils that are incident to the employment of the employee and is distinct from the defense of contributory negligence. The view we thus state is supported in *Gentile* v. *Vecchio,* 92 R. I. 38, where we noted that where the risks of an employment are obvious and the employee undertakes to work under such conditions, he assumes the risk of the perils thus involved. It is to be noted, however, that we were there limiting our discussion of the doctrine of assumption of

the risk to risks that are incident to the employment, that is, that flow from the character or nature of the employment. We would note further that we are of the opinion that *Hawkins* v. *Leach,* 88 R. I. 98, is not controlling on the question we are here considering. In that case this court decided that a declaration failed to state a cause of action, it not appearing from allegations thereof that the employer had knowledge that his invalid wife was likely to create risks which would render the servant's place of work unsafe and therefore he was not guilty of actionable negligence in failing to foresee that the invalid wife might cause injury to the servant. In short, the doctrine of assumption of the risk was never in issue in that case.

It is undoubtedly true that in particular employments an accumulation of ice and snow in an area wherein the work is to be performed would of necessity create a peril incident to the performance thereof. However, we are unable to agree that such condition in a portion of premises where a domestic servant is required to perform her duties in itself creates a peril that is an incident of the employment. It is at the most a temporary condition, usually of short duration, and clearly is one which it is the duty of the employer to correct. In the circumstances here it seems to us that the peril is not one that is incident to the work to be performed, and while it arises out of an unsafe condition of the place in which the work is to be performed in part, nevertheless it is a peril that is extraneous to the character of this plaintiff's employment.

Because we take this view, we concede that the question was properly raised as to whether the servant was negligent in using the area while the icy condition remained uncorrected. However, whether such a condition would ordinarily constitute a risk incident to her employment as a domestic servant would at best present a question of fact for the jury, and in some circumstances it might be clear as a mat-

324

ter of law that the peril created by the icy conditions was not assumed by the plaintiff. In the instant case, however, the issue was submitted to the jury, and the jury clearly rejected the argument that she had assumed the risk, and it is therefore, unnecessary to consider the latter probability.

The defendants contend also that the trial justice erred in refusing to instruct the jury as requested, arguing that certain of the requests state the correct rule of law as to assumption of risk in master-servant cases. They argue, in substance, that the denial of these requests was prejudicial error in that the charge as given failed to distinguish effectively between the doctrines of assumption of the risk and contributory negligence in these cases. If we concede that the charge as given does not disclose with reasonable clarity the distinction between the doctrines of assumption of risk and contributory negligence, it avails defendants nothing, it being well settled that where no exception is taken to a charge as given, the instruction therein stated becomes the law of the case. *Grassi* v. *Gomberg*, 81 R. I. 302.

The content of the instructions requested by defendants and denied by the trial justice is such as to compel us to conclude that in none of them is the distinction between the doctrines of assumption of the risk and contributory negligence made clear. If any of the requested instructions were given, the effect would be to confuse further the distinction between these doctrines. They are, as constituted, in our opinion more in the nature of motions to direct a verdict than of legitimate instructions to be given a jury in the circumstances. We conclude, therefore, that if error inhered in the denial of these requests to charge, which we do not concede, such error did not prejudice defendants, and these exceptions are without merit.

There remains the contention of defendants that the court erred in denying their motion for an unconditional new trial. They argue, as we understand them, that the trial justice misconceived the inferential potential of the evidence disclosing plaintiff's undertaking to walk across the icy surface upon which she slipped. The defendants refer to this as an assumption of a known and obvious risk. However, as we have hereinbefore stated, we think the issue raised by this evidence is that of contributory negligence and that such evidence was subject to reasonable, if contrary, inferences concerning her want of care in so doing. We are persuaded that such evidence was susceptible of a reasonable inference that she walked across the icy surface while exercising due care for her own safety, and it is obvious from the record that this is the inference which the jury drew therefrom.

Looking at the evidence as a whole, we are persuaded that it was susceptible of inferences that would reach contrary conclusions and with respect to which reasonable minds might well differ. In these circumstances we are unable to say that the trial justice was clearly wrong in denying defendants' motion for an unconditional new trial. *Auclair* v. *Legare,* 82 R. I. 18.

The plaintiff now argues that the question of the adequacy of the award of damages has been brought to this court for review by defendants' exception to the denial of their motion for an unconditional new trial. G. L. 1956, §9-24-19, makes specific provision for such review. That statute provides, in pertinent part, that where "the party not prevailing files or has filed exception to the decision of the court granting him a new trial, unless the prevailing party shall remit a portion of the verdict, such exception shall open for review in the supreme court, the action of the superior court in reducing the verdict, and the amount of such reduction, as well as the action of the superior court

in granting a conditional new trial." In short, whatever might have been the effect of a plaintiff's filing of a remittitur on a review in this court of the adequacy or excessiveness of damage awards prior to the enactment of the statutory provision above referred to, it is clear that the question is now brought to this court for such review on defendants' exception.

The record discloses that the trial justice took the view that the plaintiff's demonstration of her inability to close her fist prejudiced the defendants' case and resulted in the return of a verdict that was excessive by the amount of $1,500. In so doing the trial justice, in our opinion, substituted his judgment for that of the jury, it being clear that he drew an inference contrary to its finding based on evidence from which reasonable men could properly draw conflicting inferences. This, in our opinion, violates the well-settled rule that when conflicting testimony is susceptible of contrary inferences, it is error for the trial judge to substitute his conclusion as to the inferences to be drawn therefrom for those which the jury has already drawn therefrom. In all the circumstances we cannot say that evidence of this character preponderated strongly against the amount of the verdict. We make this application of the appellate test on motions for new trial convinced of the propriety of so doing in the instant circumstances. For this reason we conclude that the trial justice was clearly wrong in finding that the award of $4,500 was excessive.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Corcoran, Foley, Flynn & Treanor, George F. Treanor,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for defendants.