USCA1 Opinion

 

 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2180 LAUREL A. FOREST, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent. ____________________ ON APPEAL FROM THE DECISION OF THE UNITED STATES TAX COURT ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ _____________________ Joseph A. Kelly, with whom Carroll, Kelly & Murphy, Charles _______________ _______________________ _______ J. Reilly, Reilly Law Associates, Inc. and Robert E. Hardman were _________ ___________________________ _________________ on brief for petitioner. Kenneth W. Rosenberg, with whom Loretta C. Argrett, ______________________ _____________________ Assistant Attorney General, Gary R. Allen, Bruce R. Ellisen and _____________ ________________ Kevin M. Brown, Attorneys, Tax Division, Department of Justice, _______________ were on brief for respondent. ____________________ December 18, 1996 ____________________ TORRUELLA, Chief Judge. Petitioner-Appellant Laurel A. TORRUELLA, Chief Judge. ___________ Forest ("Taxpayer") appeals the income tax deficiency found by the Commissioner of the Internal Revenue Service ("Commissioner") and affirmed by the Tax Court. See Forest v. Commissioner, T.C. ___ ______ ____________ Memo. 1995-377. In the spotlight is Section 104(a)(2) of the Internal Revenue Code ("Code"), which provides that "any damages received . . . on account of personal injuries or sickness" be excluded from gross income.1 The Tax Court upheld the Commissioner's determination that a portion of the $2,000,000 Taxpayer received in settlement of her personal injury claim should be characterized as prejudgment interest and included in gross income. Taxpayer now seeks review of that decision. For the reasons stated below, we affirm. We do not reach, because they have been waived, issues concerning whether prejudgment interest in a settlement of a tort action is excludable as a matter of federal law. BACKGROUND BACKGROUND The pertinent facts, some of which have been stipulated and incorporated in the Tax Court's findings, and others, which we draw from the record, are not in dispute. On March 9, 1982, Taxpayer fractured her back when she slipped and fell inside her employer's walk-in refrigerator. During 1985, she brought a products liability action against the manufacturer of the refrigerator, Bohn Refrigeration Products  ____________________ 1 Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1992. Internal Revenue Code, 26 U.S.C. 1 et seq. (1988 & Supp. 1991). _______ -2- ("Bohn"), in the Superior Court of Rhode Island. See Forest v. ___ ______ Bohn Refrigeration Prods., Civil Action No. 85-0666 (R.I. ___________________________ Superior Court, Providence, Sc.). Following a trial, the jury returned a verdict on September 18, 1991, in favor of Taxpayer for $2,600,000, less ten percent for contributory negligence, for a total award of $2,340,000. In addition, pursuant to Rhode Island General Laws section 9-21-10 (1985), statutory prejudgment interest of twelve percent was added to the jury award. The total judgment, including interest, was $5,007,600. The interest constituted 53% of the total judgment. On September 27, 1991, Bohn filed a motion for a new trial. On October 15, following a hearing on the motion, the Superior Court found that the jury's award "shocked the conscience" and ordered a new trial on the issue of damages unless Taxpayer agreed to a remittitur of $1,000,000 on or before November 15, 1991. Two days later, Taxpayer consented to and filed the $1,000,000 remittitur and the Superior Court entered a judgment for Taxpayer against Bohn in the amount of $1,440,000 (i.e., $1,600,000 less ten percent contributory negligence), plus interest and costs. Statutory prejudgment interest of twelve percent was added to the judgment, this time in the amount of $1,641,600, resulting in a total judgment of $3,081,600. Again, the interest constituted 53% of the total judgment. Then, on October 30, 1991, Bohn, not satisfied with the new result, appealed the judgment to the Rhode Island Supreme Court. -3- During the pendency of the appeal, Bohn settled the case with Taxpayer on December 19, 1991. In return for a General Release ("Release") by Taxpayer of all claims for personal injuries, Bohn agreed to pay Taxpayer $2,000,000. The Release did not provide for any allocation of the settlement proceeds between damages and interest (or costs for that matter). During the settlement negotiations, the parties neither discussed whether any portion of the settlement proceeds should be allocated to interest nor stated that none of the settlement proceeds represented interest -- interest was simply not discussed, neither during the negotiations nor in the Release. On December 19, 1991, and in accordance with the terms of the General Release, Aetna Casualty issued a check in the amount of $2,000,000 to Taxpayer and her attorneys. On December 23, 1991, Bohn withdrew its appeal and the parties entered into a Satisfaction Stipulation ("Stipulation") in the Superior Court for the purpose of removing the case from the Superior Court's docket. The Stipulation stated: The judgment entered by this Court on October 17, 1991[,] in the amount of $1,440,000, plus interest and costs, has been fully satisfied. The parties did not consider the tax consequences of the Stipulation. The Clerk of the Superior Court did not add interest to the settlement of $2,000,000. During 1992, Taxpayer's attorneys issued a check to Taxpayer in the amount of $1,256,511.36, representing her share of the settlement proceeds after deducting $668,489 in legal fees -4- and costs. Taxpayer neither reported any portion of the $2,000,000 settlement on her 1992 federal income tax return nor claimed any deductions for legal fees and costs stemming from the lawsuit. There was uncontroverted testimony that Taxpayer never received a Form 1099 documenting interest income from Aetna Casualty. In its February 3, 1994, notice of deficiency, the Commissioner determined a deficiency in Taxpayer's gross income for the taxable year 1992 in the amount of $137,459. The Commissioner determined that the deficiency was based upon Taxpayer's failure to included in her 1992 gross income the additional interest income from the settlement in the amount of $560,000. This figure represented the difference between the settlement proceeds ($2,000,000) and the damage award ($1,440,000). The Commissioner also determined that, pursuant to Section 212(1) and subject to the 2% floor provided by Section 67, Taxpayer was entitled to miscellaneous itemized deductions in the amount of $175,513 for attorneys' fees attributable to the interest portion of the settlement proceeds. Taxpayer petitioned the Tax Court for a redetermination of the deficiency, arguing that an amount received in settlement of a personal injury claim represented damages under Rhode Island law and that the entire lump sum received was therefore excludable from income under Section 104(a)(2). The Tax Court sustained the Commissioner's determination, holding that a -5- portion of the settlement proceeds represented prejudgment interest and was not excludable from income: [I]n the instant case, no express allocations were made in the [G]eneral [R]elease as to interest. Indeed, the [G]eneral [R]elease does not even mention interest. Because there were no express allocations, we must look to other evidence in the record to decide whether any of the settlement proceeds are to be allocated to interest. After setting forth the chronology of events culminating with the Stipulation, the Tax Court concluded that "[b]ased on the facts and circumstances of the instant case, we hold that [Taxpayer] has failed to establish that none of the settlement proceeds were paid on account of prejudgment statutory interest." The Tax Court then proceeded to decide what portion of the $2,000,000 constitutes interest. The court determined that, "[b]ased on our calculations, we find that the interest portion of a $2,000,000 judgment accruing interest at a rate of 12% per annum over 9.5 years is $1,065,420.56" (footnote omitted). Nevertheless, in light of the Commissioner's concession that Taxpayer is not liable for a deficiency in excess of that set forth in the notice of deficiency, the Tax Court sustained the Commissioner's determination in the notice of deficiency that $560,000 of the settlement represents interest. This appeal ensued. We have jurisdiction pursuant to 26 U.S.C. 7482(a)(1). STANDARD OF REVIEW STANDARD OF REVIEW -6- We review the Tax Court's decision "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. 7482(a). Whether prejudgment interest is taxable is purely a question of law and, therefore, subject to de novo review. See Brabson v. ________ ___ _______ United States, 73 F.3d 1040, 1042 (10th Cir. 1996) (Coffin, J., _____________ sitting by designation), petition for cert. filed, 64 U.S.L.W. _________________________ 3709 (Apr. 10, 1996); Alexander v. IRS, 72 F.3d 938, 941 (1st _________ ___ Cir. 1995) (collecting cases); see also First Nat'l Bank in ________ _____________________ Albuquerque v. Commissioner, 921 F.2d 1081, 1086 (10th Cir. 1990) ___________ ____________ (stating that de novo review is applied to tax court's findings _______ of law and of ultimate fact derived from applying legal principles to subsidiary facts). The Tax Court's findings of fact -- including its allocation of the settlement proceeds to various elements of recovery -- is reviewable only for clear error. Alexander, 72 F.3d at 941. _________ DISCUSSION DISCUSSION Neither party disputes that the claim underlying Taxpayer's recovery was in the nature of a tort, or that Taxpayer suffered injuries. What the parties vigorously dispute, and what we must determine, is whether a portion of the lump sum received in settlement of Taxpayer's personal injury claim constitutes prejudgment interest and, if so, whether it is excludable as "damages received . . . on account of personal injuries" within the meaning of Section 104(a)(2). I I -7- As always, we begin with the relevant Code provisions, of which there are two. Section 61(a) provides that, "[e]xcept as otherwise provided in this subtitle, gross income means all income from whatever source derived." 26 U.S.C. 61(a); see 26 ___ C.F.R. 1.104-1(c). As the "'sweeping scope' of this section and its predecessors has been repeatedly emphasized by the Supreme Court[,]" Brabson, 73 F.3d at 1042 (quoting Commissioner _______ ____________ v. Schleier, ___ U.S. ___, 115 S. Ct. 2159, 2163 (1995)), "any ________ gain constitutes gross income unless the taxpayer demonstrates that it falls within a specific exemption." Id. In turn, ___ Section 104(a)(2) -- the exclusion at issue here -- provides, in relevant part, that gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." 26 U.S.C. 104(a)(2). As the Tenth Circuit recently noted in Brabson, "[i]n interpreting the breadth _______ of 104(a)(2), we are guided by the corollary to 61(a)'s broad construction, the 'default rule of statutory interpretation that exclusions from income must be narrowly construed.'" Id. ___ (quoting Schleier, ___ U.S. at ___, 115 S. Ct. at 2163); see also ________ ________ Delaney v. Commissioner, 99 F.3d 20 (1st Cir. 1996). _______ ____________ II II Taxpayer makes two main contentions on appeal. First, she claims that the settlement amount did not contain prejudgment interest, but consisted solely of damages, excludable under Section 104(a)(2). Second, she argues that prejudgment interest -8- is considered "damages" and, therefore, any amount attributable to prejudgment interest is excludable under Section 104(a)(2). We address Taxpayer's arguments in turn. -9- A. Allocation of Settlement Amount A. Allocation of Settlement Amount "It is settled law that taxpayers bear the burden of proving that a tax deficiency assessment is erroneous." Delaney, _______ 99 F.3d at 23. The Commissioner's "ruling has the support of a presumption of correctness, and the [Taxpayer] has the burden of proving it to be wrong." Welch v. Helvering, 290 U.S. 111, 115 _____ _________ (1933). "Ultimately, of course, a tax deficiency assessment is subject to reversal if the taxpayer establishes by a preponderance of the evidence that it was erroneous." Delaney, _______ 99 F.3d at 23. Taxpayer argues that the General Release's silence as to interest is key to the proper determination of the allocation of the settlement. While this argument may have a certain appeal, see id. ("Since the settlement agreement language itself ___ ___ suggests no differentiation between damages and prejudgment interest, its silence plainly permits the interpretation that the entire $250,000 constituted recompense for personal injury."), it ignores the guiding principle that "the required inquiry encompasses much more than the mere language subscribed to by the parties, whether in the settlement agreement proper, the stipulation of dismissal, or both, because under established precedent the Tax Court must determine 'in lieu of what were damages awarded' or paid." Id. at 23-24. In making this ___ determination, "the intent of the payor is a key determinant whether a settlement recovery is excludable from gross income." Id. at 24. ___ -10- Where, as here, that intent is not readily discernable, the Tax Court looks to all facts and circumstances surrounding the settlement, including "the details surrounding the litigation in the underlying proceeding, the allegations contained in the payee's complaint and amended complaint in the underlying proceeding, and the arguments made in the underlying proceeding by each party there." Robinson v. Commissioner, 102 T.C. 116 ________ ____________ (1994), rev'd in part on other grounds, 70 F.3d 34 (5th Cir. _________________________________ 1995), cert. denied, 117 S. Ct. 83 (1996). Furthermore, as we _____________ recently pointed out, and as Taxpayer recognizes, "a jury verdict provides 'the best indication of the worth' of the taxpayers' original tort claims." Delaney, 99 F.3d at 25 (quoting Robinson, _______ ________ 70 F.3d at 38). Here, the Tax Court, recognizing the General Release's silence as to allocation of the settlement and having little, if any, evidence before it indicating the payor's intent, looked beyond the language of the General Release to the facts and circumstances surrounding that settlement. The Tax Court considered evidence from Taxpayer's attorneys that the tax consequences of the settlement were not contemplated during the settlement negotiations. The Tax Court also recognized, however, that the settlement was negotiated under the shadow of a judgment2 that provided prejudgment interest, in the same  ____________________ 2 Taxpayer argues that the jury award was not a final verdict or decision of the court under Rhode Island law. Taxpayer contends that any debt was rendered unenforceable during the pendency of the appeal and therefore there can be no finding of an interest component based on the jury award. Even if Taxpayer correctly -11- percentage of the total award both before and after the remittitur.3 Regardless of which judgment is considered, the Tax Court was not clearly erroneous in considering this circumstance as part of the context in which the settlement was reached. Additionally, the Stipulation, which stated that "[t]he judgment . . . in the amount of $1,440,000, plus interest and costs, has been fully satisfied," indicates that the settlement reached reflected satisfaction of the jury award, as that award had been apportioned by the Superior Court. Moreover, while the available facts and circumstances support the Tax Court's finding that the settlement amount included prejudgment interest, nothing in those facts and circumstances supports the opposite conclusion. At best, the  ____________________ recites the law of Rhode Island, which we need not decide, we are not looking to the judgment as the sole indication of the existence of an interest component in this settlement. Instead, we regard the Superior Court's judgment as part of the context in which the parties negotiated the settlement. 3 Taxpayer contends that Bohn's appeal reinstated the original jury award. In support of this contention, Taxpayer cites Dawes _____ v. McKenna, 215 A.2d 235 (R.I. 1965). Dawes, however, does not _______ _____ hold that the original award is automatically reinstated; rather, it allows only that the original award is open for review on appeal. Id. at 325-26. Thus, it was not clearly erroneous for ___ the Tax Court to look to the award after remittitur as a circumstance for consideration. Furthermore, as the Tax Court appropriately recognized, even if the original award were considered, there is no precedent for the argument that a jury award larger than the settlement amount necessitates a finding that the entire settlement is attributable to compensation for personal injuries. In Robinson, 102 T.C. ________ 116, the Tax Court found that a portion of the settlement proceeds was attributable to interest even though the total proceeds represented less than twenty percent of the original damage award. -12- General Release's silence regarding the allocation of the settlement proceeds is ambiguous. In light of the other facts and circumstances weighing in favor of the Tax Court's conclusion, that ambiguity is certainly not enough to warrant a finding that the Tax Court's findings are clearly erroneous. Taxpayer contends that this case is similar to McShane _______ v. Commissioner, T.C. Memo 1987-151. Although the facts in both ____________ cases involve a jury award, an appeal, and a settlement, thereafter the two cases diverge. In McShane, the settlement _______ agreement provided for lump sum payments to the taxpayers. In a recent case similar to the one at bar, this court reviewed the McShane decision and found that the Tax Court's determination _______ that the settlement did not include interest was based on a unique set of facts: "First, the term 'without costs and interest' had been included in the settlement agreement at the insistence of counsel for the principal defendant in the tort action. Second, the intentions of all parties to the underlying tort action, as stated by their attorneys, were most consistent with an intention to pay no interest. Third, the Tax Court credited the testimony of all counsel in the tort action that the settlement amounts for each plaintiff had been arrived at by assessing the risks on appeal and that the tax consequences had never been discussed." Delaney, 99 F.3d at 25. _______ The Tax Court in the instant case made a similarly thorough inquiry into the relevant facts and circumstances. It found that the settlement agreement was negotiated in the context -13- of the jury award in the underlying case. It also heard evidence from the Taxpayer's attorneys that neither tax consequences nor interest were considered in reaching the settlement amount. It heard no evidence as to the intent of the payor, Bohn. The court found that, unlike the agreement in McShane, there was no express _______ statement in the Release indicating that the payment was not to include prejudgment interest. Finally, the Stipulation contained language indicating that the settlement satisfied the judgment after remittitur, including interest and costs. We find that these facts are sufficient to distinguish this case from McShane. _______ Thus, the Tax Court's conclusion is amply supported by the facts and circumstances surrounding the settlement and Taxpayer's arguments are insufficient to overcome her burden of showing error in the Commissioner's determination or clear error in the Tax Court's findings. B. Whether prejudgment interest is excludable as B. Whether prejudgment interest is excludable as "damages" under Rhode Island law. "damages" under Rhode Island law. 1. Kovacs v. Commissioner 1. Kovacs v. Commissioner ______ ____________ Taxpayer argues that the Code, legislative history and prior case law do not support the Tax Court's holding in Kovacs ______ v. Commissioner, 100 T.C. 124 (1993), aff'd, 25 F.3d 1048 ____________ _____ (6th Cir.), cert. denied, 115 S. Ct. 424 (1994), that prejudgment ____________ interest on a personal injury claim is not excludable from income under Section 104(a)(2). Her contention is that the Tax Court in Kovacs improperly relied on precedent holding that post-judgment ______ ____ interest is not excludable from interest income. She further maintains that nothing in the legislative history of Section -14- 104(a)(2) supports a distinction between compensatory damages and interest awarded on a claim of physical injury. Finally, relying on the Periodic Payment Settlement Act of 1982,4 Taxpayer argues that Congress, in amending the Code to allow for the exclusion of period settlement payments -- which would include a component representing the time value of money, or interest -- disregarded any difference between lump sum and periodic payments and meant for any interest income upon settlement to be excludable. As we find nothing in the record below, including the testimony presented and the initial and reply briefs of the parties, to indicate that these arguments were raised before the Tax Court, we decline Taxpayer's invitation to consider them for the first time on appeal. See Delaney, 99 F.3d at 26 (determining that ___ _______ taxpayer's failure to raise a similar argument before the Tax Court amounted to waiver of that argument). 2. Treatment of Interest Under Rhode Island Law 2. Treatment of Interest Under Rhode Island Law Taxpayer contends that whether an award is taxable is determined by reference to the nature of the underlying claim. She points out that the underlying claim here is one to redress personal injury and, as such, the damages received thereon are  ____________________ 4 We note, in passing, that, to the extent Taxpayer's arguments rely on this amendment, such reliance is misplaced. That Act allows the excludability of the entire amount of periodic payments in settlement of a claim. In so doing, the Act allows a portion of "interest" to be excluded from gross income. This Act, however, does not assist Taxpayer, as her settlement does not fall within the provisions of that Act. We apply the statutory language relevant to Taxpayer's particular claim. As the Tax Court did in Kovacs v. Commissioner, 100 T.C. 124, 132- ______ ____________ 33, any inconsistency between the two methods of settlement we leave to Congress to remedy. -15- excludable. Noting that the nature of the underlying claim is determined under the relevant state law, Taxpayer argues that, under Rhode Island law, statutorily imposed interest is considered part of damages meant to compensate the injured party and thus is excludable. We recently visited the question of state law characterization of interest. In Delaney, we looked to the _______ "thoughtful" approach utilized in Brabson, 73 F.3d 1040 (10th _______ Cir. 1996) (Coffin, J., sitting by designation): "The Tenth Circuit . . . noted that though state law governs the nature of legal interests and rights created under state law, the 'federal tax consequences pertaining to such interests and rights are solely a matter of federal law.' . . . Accordingly, the Brabson panel first _______ ascertained the pertinent characteristics of statutory prejudgment interest under [the relevant state] law, but then looked to federal law to determine its excludability." Delaney, 99 F.3d at 26. _______ Accordingly, we look first to Rhode Island law to determine the legal nature of prejudgment interest. Taxpayer relies on Factory Mutual Insurance Company of America v. Cooper, ___________________________________________ ______ 262 A.2d 370 (R.I. 1970), for the proposition that interest is part of damages. Taxpayer's reliance is misplaced. The Factory _______ Mutual court did not hold that prejudgment interest is a ______ component of damages under Rhode Island law. Instead, the court there was determining the meaning of the word "damages" as it was used in an insurance policy. See id. at 373.  ___ ___ -16- "[S]tatutory prejudgment interest is not an element of damages in a personal injury action under Rhode Island law." Delaney, 99 F.3d at 26 (citing DiMeo v. Philbin, 502 A.2d 825, _______ _____ _______ 826 (R.I. 1986) (determining that prejudgment interest in personal injury action is purely statutory and therefore not an element of damages)). Having found that, under Rhode Island law, prejudgment interest is not considered damages, we next look to federal law to determine the nature of prejudgment interest for federal tax purposes. See id. ___ ___ 3. Prejudgment Interest Under Federal Law. 3. Prejudgment Interest Under Federal Law. The Supreme Court recently explained the two requirements for exclusion under Section 104(a)(2): "First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'; and second, the taxpayer must show that the damages were received 'on account of personal injuries or sickness.'" Commissioner v. Schleier, ___ U.S. ___, 115 S. Ct. 2159, 2167 ____________ ________ (1995). The cause of action underlying Taxpayer's settlement was assuredly one based upon tort or tort type rights. We look, then, to determine whether Taxpayer has met the second prong of excludability. Taxpayer appears to argue that the purpose of the statutorily-imposed prejudgment interest is to make her whole, as though the injury had never occurred. This argument rests on two statements we glean from her brief to the effect that the -17- interest imposed is meant to compensate the injured party for a delay in the payment. Though this argument may have some merit, we reserve the question for another day. Because Taxpayer failed to raise the contention that the statutorily-imposed prejudgment interest is somehow related to her personal injury before the Tax Court, she has not preserved the argument for appeal. We find that argument waived. See Mulero-Rodr guez v. Ponte, Inc., 98 ___ ________________ ___________ F.3d 670, 679 (1st Cir. 1996) (noting that appellants' silence as to a particular legal argument before the trial court amounted to waiver of that issue on appeal); see also National Ass'n of _________ __________________ Social Workers v. Harwood, 69 F.3d 622, 627-28 (1st Cir. 1995) _______________ _______ (setting forth the strenuous guidelines for finding an exception to this waiver rule). In addition, we note that Taxpayer's failure to adequately present any "make whole" argument in her brief on appeal also supports a finding that this issue has been waived. We have previously recognized that "a litigant has an obligation 'to spell out its arguments squarely and distinctly' . . . or else forever hold its peace." See Rivera-G mez v. Castro, 843 ___ ____________ ______ F.2d 631, 634-35 (quoting Paterson-Leitch Co. v. Massachusetts ___________________ _____________ Municipal Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. _______________________________ 1988)). Here, Taxpayer has failed to put forth a coherent argument, beyond vague reference, regarding any relationship an award of statutorily-imposed interest might have to her personal injuries. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do -18- counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 ______________ _______ (1st Cir.), cert. denied, 494 U.S. 1082 (1990); see also In re ____________ ________ _____ Three Additional Appeals Arising Out of the San Juan Dupont Plaza _________________________________________________________________ Hotel Fire Litigation, 93 F.3d 1, 2 n.2 (1st Cir. 1996) (noting _____________________ that "it is beyond peradventure that we will not address an issue when the party raising it fails to treat it seriously"). We will not "abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Zannino, 895 F.2d _______ at 17. Because we refuse to guess at Taxpayer's argument, any "make-whole" argument she might have made is waived. We decline to pass on this question where the court below was not presented with either a legal argument or a factual predicate on which to make a reasoned analysis of any compensatory component of prejudgment interest and where we do not have the benefit of a properly briefed argument. CONCLUSION CONCLUSION For the foregoing reasons, the decision below is affirmed. affirmed ________ -19-